# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK
# BROOKLYN DIVISION

| | |
|---|---|
| **DAVID LEGEROS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | )  Civil Action No. |
| v. | ) |
| | ) |
| **SOUTHWEST AIRLINES, CO.,** | ) |
| | ) |
| **Defendant.** | ) |

## VERIFIED COMPLAINT IN EQUITY AND PETITION FOR PRELIMINARY INJUNCTION

David Legeros hereby files this verified complaint in equity for injunctive relief and petition for preliminary injunction against Southwest Airlines, Co. ("SWA"), as follows.

## NATURE OF THE ACTION

1. This is an action seeking injunctive and preliminary injunctive relief enjoining SWA from requiring Mr. Legeros to undergo a psychological evaluation.

## PARTIES

2. David Legeros is an individual resident of the State of New York. Mr. Legeros resides at 425 63rd Street, Brooklyn, Kings County, New York 11220. Mr. Legeros is subject to the jurisdiction of this Court and may be served by serving the undersigned.

3. Southwest Airlines, Co. is a foreign for profit corporation incorporated under the laws of the State of Texas and may be served by serving its registered agent Corporation Service Company at its registered office, which is located at 80 State Street, Albany, New York 12207 or at SWA' principal place of business at 2702 Love Field Drive, Headquarter 6TX, Dallas, Texas 75235.

## JURISDICTION AND VENUE

4. Jurisdiction in this action is proper in this Court pursuant to 28 U.S.C. § 1332(a)(1) as this is a diversity jurisdiction action and all of the plaintiffs are citizens of different states from all of the defendants, and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

5. Venue in this action is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because all, or substantially all, of the acts or omissions giving rise to the claims asserted herein occurred in this District.

## FACTUAL BACKGROUND

6. On August 15, 2023, Mr. Legeros was the captain and pilot in command of Southwest Flight WN307 from Houston, Texas to Cancun, Mexico.

7. Very shortly into the flight, the aircraft experienced an engine fire and severe damage which was observed by the passengers.

8. A visible flame was emitting from an engine that could be seen by passengers on the flight through the aircraft windows.

9. This event, which enjoys some YouTube fame, unsurprisingly terrified the passengers.

10. It also posed the risk of causing an engine to detach from the aircraft (as they are built to do to save the aircraft in such situations) and to effectively become a missile aimed at Houston.

11. Mr. Legeros made the wise decision to make an emergency return to Houston Hobby.

12. In such situations, the Code of Federal Regulations, specifically 14 C.F.R. §§ 91.3(b) and 121.533, affords the pilot in command broad discretion to take necessary actions.

13. Mr. Legeros was not the pilot at the controls of the aircraft at the time.

14. Instead, his first officer was flying the aircraft when the engine fire was discovered.

15. Deviating from SWA's Standard Operating Procedures ("SOP"), but in accordance with the C.F.R., Mr. Legeros instructed his first officer to land the plane.

16. Mr. Legeros made this decision for two reasons:

    a. First, a sudden switch of controls from the first officer's control to Mr. Legeros's control could have caused enough jerk to drop the flaming engine; and

3

   b. Second, Mr. Legeros, who is fluent in Spanish, was calmly speaking to the heavily Hispanic passengers in both English and Spanish to explain that the situation was under control, and was communicating with air traffic control to ensure that the airspace and runways were clear for an emergency landing.

17. Mr. Legeros captained his crew and caused the aircraft to land safely.

18. Upon landing, the passengers, who were aware of the engine fire, and who feared an explosion, were determined to exit the aircraft.

19. Mr. Legeros again spoke to the passengers calmly in both English and Spanish to assure them that the engine would not explode, and that they should not use the emergency exits from the aircraft.

20. This is because Mr. Legeros was aware of other flights where passengers were severely injured utilizing aircraft slides.

21. After Mr. Legeros's assurances, the passengers calmly exited the aircraft through the cabin door as usual.

22. Each passenger then boarded separate flights to Cancun.

23. None refused to fly Southwest to Cancun, despite the fiasco.

24. Had SWA decided to reward Mr. Legeros, or even ignore him, following his heroics, this story would be over, but SWA decided to punish him.

25. Incredibly, instead of accolades, on September 19, 2023, SWA held a meeting to discuss Mr. Legeros's conduct during Flight WN307, and after "conducting a thorough investigation" SWA found that Mr. Legeros "engaged in serious misconduct."

26. Instead of immediate termination for the sin of safely getting a flaming aircraft to the tarmac, Mr. Legeros was forced to sign a "Last Chance Agreement" with a myriad of extraordinary requirements for his "retraining program."

27. Mr. Legeros is a person of color who is fluent in several languages, including Spanish and Arabic.

28. Mr. Legeros also has a reputation for mentoring and teaching younger underrepresented people to fly aircraft, ensuring that many apply to SWA with substantial flight hours such that they are very competitive with SWA's supermajority of white male pilots.

29. SWA famously does not appreciate having to hire women or people of color.

30. Moreover, SWA management criticized Mr. Legeros for speaking Spanish to his passengers during Flight WN307.

31. Based on the pretense of some "serious misconduct," but in reality due to his status as a person of color, SWA has been looking to push Mr. Legeros out.

32. SWA then grounded Mr. Legeros from flight status.

33. Mr. Legeros has not yet returned to flight status.

34. On December 14, 2023, Mr. Legeros filed a claim with the Equal Employment Opportunity Commission ("EEOC") under Inquiry Number 460-2024-01807.

35. Mr. Legeros's EEOC claim is pending, but he has not yet received his "right to sue" letter.

36. On January 29, 2024, SWA informed Mr. Legeros that he would be compelled to undergo a psychological evaluation termed a Fitness For Duty evaluation "FFD."

37. SWA frequently employs these FFDs with a preordained result to remove pilots that they decide are particularly sticky.

38. There are few better ways to remove an irritating pilot than to develop a medical record that purports to diagnose said pilot as insane.

39. Mr. Legeros was initially set for FFD, with a doctor of SWA's choosing, on February 19, 2024, but Mr. Legeros was unable to attend because his father had been hospitalized.

40. SWA now seeks to reschedule the FFD.

41. SWA insists on this FFD upon threat of termination.

42. If forced to undergo a psychological evaluation or FFD, especially with a doctor of SWA's choosing, would be crippling to Mr. Legeros's career in aviation.

43. The damage from such a preordained evaluation would be irreparable.

44. The damage from such an event would be far greater than $75,000.00 worth of damage, as it would effectively end Mr. Legeros's career as a pilot.

45. Any FFD or other psychological examination is entirely improper.

46. Now, SWA is demanding that Mr. Legeros attend a meeting with the Chief Pilot at which he will be ordered to resign or be terminated over this matter.

47. Mr. Legeros now seeks injunctive relief to enjoin SWA from compelling a psychological examination or FFD.

## COUNT I
### Injunction

48. Mr. Legeros restates paragraphs 1-47 and incorporates said paragraphs herein by reference.

49. Mr. Legeros intends to bring an action against SWA for employment discrimination upon receipt of the "right to sue" letter from the EEOC.

50. However, Mr. Legeros's EEOC case is currently pending.

7

51. In the interim, Mr. Legeros seeks to avoid a psychological evaluation or FFD before the resolution of his employment discrimination case.

52. The damage to Mr. Legeros from a psychological evaluation with a preordained outcome would be crippling to Mr. Legeros's career in aviation and entirely irreparable.

53. Mr. Legeros is currently grounded and is not flying for SWA.

54. The greatest potential harm that SWA could suffer for the grant of said injunction would be that Mr. Legeros would wait for his "right to sue" letter and file his complaint.

55. Mr. Legeros caused flight WN307 to land safely at Houston Hobby after the engine caught fire, while speaking unacceptable languages to his passengers, and has been grounded for it.

56. As a result there is a considerable likelihood of Mr. Legeros's ultimate success on the merits.

57. No element of this matter has any meaningful impact on the public interest, and therefore, granting the sought-after injunction will not disserve the public interest, since if Mr. Legeros is actually insane, he is not flying, nor is he seeking to return to flight duty via *this* action.

58. Injunctive relief in favor of Mr. Legeros, enjoining SWA from subjecting Mr. Legeros to a psychological evaluation or FFD prior to the outcome of his EEOC case is appropriate.

## COUNT II
### Preliminary Interlocutory Injunction

59. Mr. Legeros restates paragraphs 1-58 and incorporates said paragraphs herein by reference.

60. SWA seeks to impose a psychological evaluation or FFD on Mr. Legeros, at the threat of termination, in the immediate future.

61. Mr. Legeros intends to bring an action against SWA for employment discrimination upon receipt of the "right to sue" letter from the EEOC.

62. However, Mr. Legeros's EEOC case is currently pending.

63. In the interim, Mr. Legeros seeks to avoid a psychological evaluation or FFD before the resolution of his employment discrimination case.

64. The damage to Mr. Legeros from a psychological evaluation with a preordained outcome would be crippling to Mr. Legeros's career in aviation and entirely irreparable.

65. Mr. Legeros is currently grounded and is not flying for SWA.

66. The greatest potential harm that SWA could suffer for the grant of said injunction would be that Mr. Legeros would wait for his "right to sue" letter and file his complaint, all the while flying a desk.

67. Mr. Legeros caused flight WN307 to land safely at Houston Hobby after the engine caught fire, while speaking unacceptable languages to his passengers, and has been grounded for it.

68. As a result there is a considerable likelihood of Mr. Legeros's ultimate success on the merits.

69. No element of this matter has any meaningful impact on the public interest, and therefore, granting the sought-after injunction will not disserve the public interest, since if Mr. Legeros is actually insane, he is not flying, nor is he seeking to return to flight duty via *this* action.

70. Preliminary injunctive relief in favor of Mr. Legeros, enjoining SWA from subjecting Mr. Legeros to a psychological evaluation or FFD prior to the outcome of his EEOC case is appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Legeros prays for judgment as requested above against SWA and further requests:

    a.    Injunctive relief;

    b.    Preliminary interlocutory injunctive relief; and

    c.    Any other relief as this Court may deem just and reasonable.

## **DEMAND FOR JURY TRIAL**

Mr. Legeros requests a trial by jury on all issues so triable, although Mr. Legeros recognizes that injunctive relief is not generally the province of the jury.

Respectfully submitted, this 29th day of April, 2024.

/s/ Eric M. Burse
Eric M. Burse
New York Bar No. 5756598
100 William Street
20th Floor
New York, New York 10038
(212) 803-5103
eburse@nycds.org
*Attorneys for Mr. Legeros*

FGP LAW, LLC

/s/ Frank G. Podesta
Frank G. Podesta
Georgia Bar No. 496530
Florida Bar No. 0090488
fpodesta@fgplaw.com
*Seeking Admission Pro Hac Vice*

555 Sun Valley Drive
Suite N-3
Roswell, Georgia 30076
678.677.5143 (voice)
678.222.0123 (facsimile)
*Attorneys for Mr. Legeros*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
BROOKLYN DIVISION

| | |
|---|---|
| DAVID LEGEROS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. |
| v. | ) |
| | ) |
| SOUTHWEST AIRLINES, CO., | ) |
| | ) |
| Defendant. | ) |

## VERIFICATION OF VERIFIED COMPLAINT AND PETITION FOR PRELIMINARY INJUNCTION

STATE OF NEW YORK      )
                                              )
COUNTY OF KINGS        )

Personally appeared before the undersigned attesting officer, duly authorized to administer oaths, David Legeros, who, after being duly sworn, deposes and states on oath that the allegations, facts and claims contained in this Verified Complaint and Petition for Preliminary Injunction are true and correct upon his personal knowledge and belief.

This 29th day of April, 2024.

_____
David Legeros

Sworn to and subscribed before me this
29th Day of April, 2024.

_____
Notary Public            (SEAL)
My commission expires: Apr 7, 2027

SPAULDING PATRIC O MILLS III
COMM. # 2443491
NOTARY PUBLIC • CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires Apr. 7, 2027