IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
BROOKLYN DIVISION

| | | |
|---|---|---|
| DAVID LEGEROS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. |
| v. | ) | |
| | ) | |
| SOUTHWEST AIRLINES, CO., | ) | |
| | ) | |
| Defendant. | ) | |

## MOTION FOR PRELIMINARY INJUNCTION

On August 15, 2023, Mr. Legeros was the captain and pilot in command of Southwest Flight WN307 from Houston, Texas to Cancun, Mexico. *See Verified Complaint,* ¶ 6. Very shortly into the flight, the aircraft experienced an engine fire and severe damage which was observed by the passengers. *VC,* ¶ 7. A visible flame was emitting from an engine that could be seen by passengers on the flight through the aircraft windows. *VC,* ¶ 8.

This event, which enjoys some YouTube fame, unsurprisingly terrified the passengers. *VC,* ¶ 9. It also posed the risk of causing an engine to detach from the aircraft (as they are built to do to save the aircraft in such situations) and to effectively become a missile aimed at Houston. *VC,* ¶ 10. Mr. Legeros made the wise decision to make an emergency return to Houston Hobby. *VC,* ¶ 11.

In such situations, the Code of Federal Regulations, specifically 14 C.F.R. §§ 91.3(b) and 121.533, affords the pilot in command broad discretion to take necessary actions. *VC*, ¶ 12. Mr. Legeros was not the pilot at the controls of the aircraft at the time. *VC*, ¶ 13. Instead, his first officer was flying the aircraft when the engine fire was discovered. *VC*, ¶ 14.

Deviating from SWA's Standard Operating Procedures ("SOP"), but in accordance with the C.F.R., Mr. Legeros instructed his first officer to land the plane. *VC*, ¶ 15. Mr. Legeros made this decision for two reasons:

   a. First, a sudden switch of controls from the first officer's control to Mr. Legeros's control could have caused enough jerk to drop the flaming engine; and

   b. Second, Mr. Legeros, who is fluent in Spanish, was calmly speaking to the heavily Hispanic passengers in both English and Spanish to explain that the situation was under control, and was communicating with air traffic control to ensure that the airspace and runways were clear for an emergency landing. *VC*, ¶ 16.

Mr. Legeros captained his crew and caused the aircraft to land safely. *VC*, ¶ 17. Upon landing, the passengers, who were aware of the engine fire, and who feared an explosion, were determined to exit the aircraft. *VC*, ¶ 18. Mr. Legeros again spoke to the passengers calmly in both English and Spanish to assure them

that the engine would not explode, and that they should not use the emergency exits from the aircraft. *VC*, ¶ 19. This is because Mr. Legeros was aware of other flights where passengers were severely injured utilizing aircraft slides. *VC*, ¶ 20.

After Mr. Legeros's assurances, the passengers calmly exited the aircraft through the cabin door as usual. *VC*, ¶ 21. Each passenger then boarded separate flights to Cancun. *VC*, ¶ 22. None refused to fly Southwest to Cancun, despite the fiasco. *VC*, ¶ 23.

Had SWA decided to reward Mr. Legeros, or even ignore him, following his heroics, this story would be over, but SWA decided to punish him. *VC*, ¶ 24. Incredibly, instead of accolades, on September 19, 2023, SWA held a meeting to discuss Mr. Legeros's conduct during Flight WN307, and after "conducting a thorough investigation" SWA found that Mr. Legeros "engaged in serious misconduct." *VC*, ¶ 25.

Instead of immediate termination for the sin of safely getting a flaming aircraft to the tarmac, Mr. Legeros was forced to sign a "Last Chance Agreement" with a myriad of extraordinary requirements for his "retraining program." *VC*, ¶ 26. Mr. Legeros is a person of color who is fluent in several languages, including Spanish and Arabic. *VC*, ¶ 27. Mr. Legeros also has a reputation for mentoring and teaching younger underrepresented people to fly aircraft, ensuring that many apply to SWA with substantial flight hours such that they are very competitive with

3

SWA's supermajority of white male pilots. *VC*, ¶ 28. SWA famously does not appreciate having to hire women or people of color. *VC*, ¶ 29. Moreover, SWA management criticized Mr. Legeros for speaking Spanish to his passengers during Flight WN307. *VC*, ¶ 30.

Based on the pretense of some "serious misconduct," but in reality due to his status as a person of color, SWA has been looking to push Mr. Legeros out. *VC*, ¶ 31. SWA then grounded Mr. Legeros from flight status. *VC*, ¶ 32. Mr. Legeros has not yet returned to flight status. *VC*, ¶ 33.

On December 14, 2023, Mr. Legeros filed a claim with the Equal Employment Opportunity Commission ("EEOC") under Inquiry Number 460-2024-01807. *VC*, ¶ 34. Mr. Legeros's EEOC claim is pending, but he has not yet received his "right to sue" letter. *VC*, ¶ 35.

On January 29, 2024, SWA informed Mr. Legeros that he would be compelled to undergo a psychological evaluation termed a Fitness For Duty evaluation "FFD." *VC*, ¶ 36. SWA frequently employs these FFDs with a preordained result to remove pilots that they decide are particularly sticky. *VC*, ¶ 37. There are few better ways to remove an irritating pilot than to develop a medical record that purports to diagnose said pilot as insane. *VC*, ¶ 38.

Mr. Legeros was initially set for FFD, with a doctor of SWA's choosing, on February 19, 2024, but Mr. Legeros was unable to attend because his father had

been hospitalized. *VC*, ¶ 39. SWA now seeks to reschedule the FFD. *VC*, ¶ 40. SWA insists on this FFD upon threat of termination. *VC*, ¶ 41.

If forced to undergo a psychological evaluation or FFD, especially with a doctor of SWA's choosing, would be crippling to Mr. Legeros's career in aviation. *VC*, ¶ 42. The damage from such a preordained evaluation would be irreparable. *VC*, ¶ 43.

The damage from such an event would be far greater than $75,000.00 worth of damage, as it would effectively end Mr. Legeros's career as a pilot. *VC*, ¶ 44. Any FFD or other psychological examination is entirely improper. *VC*, ¶ 45. Now, SWA is demanding that Mr. Legeros attend a meeting with the Chief Pilot at which he will be ordered to resign or be terminated over this matter. *VC*, ¶ 46.

A district court may grant injunctive relief if the movant shows the following: (1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998).

If Mr. Legeros is subjected to a compulsory psychological examination with a clinician of SWA's choosing, he is certain to be termed a flight risk, regardless of his actual psychological status, which will cause devastating harm to his career in

aviation. If Mr. Legeros is terminated or compelled to resign from SWA for sins he did not commit, irreparable harm will likewise result.

Ordering Defendants to abstain from compelling Mr. Legeros to attend a psychological evaluation with a clinician of SWA's choosing, from firing Mr. Legeros, or from compelling Mr. Legeros to resign, during the pendency of the EEOC matter, will not result in any harm to Defendants. The greatest potential harm that Defendants would be that they would retain a seasoned captain who has avoided a major airplane crash during the pendency of the case.

Mr. Legeros is certain to prevail on the merits against SWA. No element of this matter has any meaningful impact on the public interest, and therefore, granting the sought-after injunction will not disserve the public interest. An interlocutory preliminary injunction ordering SWA to abstain (a) from compelling Mr. Legeros to attend a psychological evaluation with a clinician of SWA's choosing, (b) from firing Mr. Legeros, and/or (c) from compelling Mr. Legeros to resign from SWA, during the pendency of the EEOC matter.

Respectfully submitted, this 29th day of April, 2024.

/s/ Eric M. Burse
Eric M. Burse
New York Bar No. 5756598
100 William Street
20th Floor
New York, New York 10038
(212) 803-5103
eburse@nycds.org
*Attorneys for Mr. Legeros*


FGP LAW, LLC

/s/ Frank G. Podesta
Frank G. Podesta
Georgia Bar No. 496530
Florida Bar No. 0090488
fpodesta@fgplaw.com
*Seeking Admission Pro Hac Vice*

555 Sun Valley Drive
Suite N-3
Roswell, Georgia 30076
678.677.5143 (voice)
678.222.0123 (facsimile)
*Attorneys for Mr. Legeros*